FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 SEP 28 AM 8: 46
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| JUANITA L. BURNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 111-156 |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Juanita L. Burney ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.[1]

I. **BACKGROUND**

Plaintiff protectively applied for DIB on November 7, 2006, alleging a disability onset date of March 1, 2006. Tr. ("R"), p. 57. The Social Security Administration denied Plaintiff's applications initially, R. 58-61, and on reconsideration, R. 62-64, 65-68. Plaintiff then

---

[1] The Court notes that Plaintiff submitted records with her brief that she believed were not part of the transcript. See doc. no. 10, Ex. A. However, these records were part of the record before the ALJ. See R. 208-18.

requested a hearing before an Administrative Law Judge ("ALJ"), R. 70, and the ALJ held a hearing on June 1, 2009, R. 27-55. Plaintiff, who was represented by counsel, testified on her own behalf at the hearing; the ALJ also heard testimony from a Vocational Expert ("VE"). R. 33-46, 46-54. On August 27, 2009, the ALJ issued an unfavorable decision. R. 16-26.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 1, 2006, the alleged onset of disability (20 C.F.R. § 404.1571 *et seq.*).

2. The claimant has the severe impairments of Meuniere's disease; degenerative disc disease of the lumbar and cervical spines; and peripheral neuropathy (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526).

4. The claimant has the residual functional capacity ("RFC") to perform light work,[2] except that she must avoid climbing ladders, ropes, or scaffolds. The claimant is limited to frequent crouching, crawling, kneeling, twisting, bending, or stooping. She must avoid any exposure to extreme cold or concentrated gasses, fumes, or dust. The claimant must be allowed to sit or stand at will. Based on this RFC assessment, the claimant is capable of performing past relevant work as a grant program manager (20 C.F.R. § 404.1565).

---

[2] "Light work" is defined as work that involves

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

2

R. 21-26.

Because the ALJ determined that Plaintiff could perform her past relevant work, the sequential evaluation process stopped, and the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from March 1, 2006 through August 27, 2009 (the date of the decision). R. 26. When the Appeals Council denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ improperly discounted the opinions of Plaintiff's treating physicians,[3] and (2) the ALJ failed to provide an adequate and specific rationale for rejecting Plaintiff's testimony about her subjective complaints. (See doc. no. 10 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits is supported by substantial evidence and should be affirmed. (See doc. no. 11 (hereinafter "Comm'r's Br.").)

II. **STANDARD OF REVIEW**

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence,

---

[3] In her brief, Plaintiff argues that the ALJ "improperly ignored" the opinions of her treating physicians. Doc. no. 10, p. 8. While the ALJ failed to identify her doctors by name or cite to specific page numbers when discussing their notes, he did not altogether ignore the opinions of Plaintiff's treating physicians. For example, in discussing the opinion of J. Allen Goodrich, M.D., the ALJ stated that "[o]n April 19, 2006, her orthopedist completed paperwork...." R. 25. The ALJ also, when referencing the record, cited to exhibit numbers rather than actual page numbers. See id. (citing Exhibit 1F, p. 30, which is page 196 in the transcript). Thus, the Court takes Plaintiff to mean that the ALJ improperly discounted the opinions of her treating physicians. See doc. no. 10, pp. 8-9.

3

Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner's decision even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d

1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ Properly Discounted the Opinions of Plaintiff's Treating Physicians

Plaintiff first contends that the ALJ improperly discounted the opinions of J. Allen Goodrich, M.D., Audrey Henderson, M.D., and J. Frederick Marschalk, M.D., Plaintiff's treating physicians, who "concluded that she would be unable to return to her prior work." Pl.'s Br., pp. 8-9. Plaintiff also argues that the ALJ erred by ignoring the opinion of Frank Rumph, M.D., her employer, and by relying on the opinions of state agency doctors. Id. at 9. By contrast, the Commissioner contends that the ALJ partially accommodated the conclusions of Plaintiff's treating physicians to the extent he limited Plaintiff to a sit/stand option, and that the ALJ otherwise properly discounted their opinions about Plaintiff's limitations. Comm'r's Br., pp. 5-8. The Commissioner also contends that the ALJ properly afforded no weight to Dr. Rumph's opinion and properly relied on the opinions of the state agency doctors. Id. at 4, 8. The Commissioner has the better arguments.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The

5

[Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

That having been said, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991). Finally, under Social Security Ruling ("SSR") 96-5p, the determination of an individual's RFC is an issue reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996); 20 C.F.R. § 404.1527(d).

### 1. Dr. J. Allen Goodrich

Plaintiff argues that the ALJ improperly discounted Dr. Goodrich's assessment from April 19, 2006 that Plaintiff could not perform her job. Pl.'s Br., pp, 6, 9. The ALJ addressed Dr. Goodrich's assessment in his decision, noting that he "completed paperwork stating that the claimant could not operate a computer mouse or sit for long periods because of her cervical and lumbar impairments." R. 25 (citing R. 196). The ALJ noted in his review of the medical evidence that Dr. Goodrich consistently recommended conservative treatment – including exercise, weight loss, and pain management – for Plaintiff's symptoms. R. 23 (citing R. 363, 571, 572). A course of conservative treatment may be used to discount a

doctor's assessment of a plaintiff as disabled. See Patterson v. Astrue, No. 1:07-cv-00129-MP-AK, 2008 WL 4097461, at *1 (N.D. Fla. Aug. 27, 2008) (treating physician's "conservative, non-aggressive treatments" contradicted her opinion that claimant was disabled and provided good cause for the ALJ to discount her opinion (citing Lewis, 125 F.3d at 1440)).

The ALJ also discounted Dr. Goodrich's assessment because "office visit records indicate that he was at a loss to explain her symptoms, which were not supported by objective evidence." R. 25. In particular, the ALJ emphasized Plaintiff's last visit in the record with Dr. Goodrich, from September 18, 2008, where Dr. Goodrich suggested she see a rheumatologist because his examination and review of X-rays revealed no abnormalities explaining her complaints. R. 23 (citing R. 669). Thus, the ALJ showed good cause for discounting Dr. Goodrich's opinion, as it was unsupported by his treatment notes.

### 2. Dr. Audrey Henderson

The Court next turns to the opinion of Dr. Audrey Henderson from March 27, 2006, which Plaintiff also alleges the ALJ improperly discounted. Pl.'s Br., pp. 7, 9. The ALJ specifically addressed Dr. Henderson's assessment in his decision, noting that "[t]he claimant's primary care physician supported her application for state disability retirement, indicating on March 27, 2006, that she could not perform 'all' of her job duties." R. 25 (citing R. 191-92). The ALJ discounted the assessment, however, because her "analysis [did] not indicate an inability to sustain all work efforts." Id.

Dr. Henderson indicated on the assessment form, in the section asking for physical findings confirming her diagnosis, that "[o]n exam," Plaintiff was found to have "[l]imited

7

range of motion" and [d]iffuse [t]enderness to palpation" in her cervical spine and lumbar spine, a "[v]algus [d]eformity" in her knees, and "[d]ecreased [s]ensation [g]lobally" in her right hand." R. 191. Dr. Henderson failed to explain in her assessment, however, why these findings showed that Plaintiff was unable to sit, type, or use a computer mouse for prolonged periods. Accordingly, the ALJ articulated good cause for discounting Dr. Henderson's opinion, as it was merely conclusory and was unsupported by her treatment notes. See Schnorr, 816 F.2d at 582.

### 3. Dr. Fred F. Marschalk

Plaintiff also alleges the ALJ erred in discounting the opinion of Dr. Marschalk, "a Specialist in Pulmonary and Internal Medicine," who provided two assessments of Plaintiff's ability to work. Pl.'s Br., pp. 4, 9. An ALJ may discount the opinion of a treating physician, however, based on the nature of the treatment relationship he had with the plaintiff, particularly when that physician's notes do not reflect any treatment for the conditions about which he is offering an opinion. See 20 C.F.R. § 404.1527(c); Brown v. Comm'r of Soc. Sec., 425 F. App'x 813, 818-19 (11th Cir. 2001) (*per curiam*) (ALJ would have been free to assign little weight to psychologist's assessment that plaintiff could not work due to physical issues, because psychologist was not a physician); Patterson v. Astrue, No. 5:10-CV-5-Oc-10TGW, 2011 WL 1790192, at *5 (M.D. Fla. Apr. 5, 2011), *adopted by* 5:10-CV-5-OC-10TGW, 2011 WL 1776365 (M.D. Fla. May 10, 2011) (ALJ properly discounted endocrinologist's opinion about plaintiff's cervical and lumbar spondylosis, because they were beyond his area of expertise and his treatment notes showed no treatment for such issues).

8

The ALJ addressed both of Dr. Marshcalk's assessments, commenting that the May 2, 2006 assessment was "not compatible with the impairments treated by him," and stating that Dr. Marschalk's opinion in the narrative report was "given little weight in this matter because he is offering opinions regarding the impact of the claimant's musculoskeletal complaints" when he had only treated her for "asthma, bronchitis, and other upper and lower respiratory complaints." R. 25 (citing R. 186-89, 436-38). To the extent that Dr. Marschalk offered an opinion about Plaintiff's issues with her neck, back, or knees, his notes do not suggest, nor does the record otherwise reflect, that he ever treated Plaintiff for those issues. Moreover, Dr. Marschalk's opinion that Plaintiff was unable to maintain a job, R. 438, is a determination reserved to the Commissioner which was entitled to no significant weight. See SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996); 20 C.F.R. § 404.1527(d). Thus, the ALJ showed good cause for discounting Dr. Marschalk's opinion about the limitations of Plaintiff's musculoskeletal impairments.

### 4. Dr. Frank Rumph

Plaintiff also contends, without explanation, that the ALJ erred when he was "silent as to the weight he gave Dr. Rumph[,] who had observed the Plaintiff in her efforts to maintain her employment." Pl.'s Br., p. 9. Dr. Rumph, however, was Plaintiff's employer, not her treating doctor, and was thus an "other source" under the regulations. See 20 C.F.R. § 404.1513(d); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Failure to mention the opinion of an "other source" is not grounds for reversal, in part, because the decision whether to consider such an opinion is within the ALJ's discretion. See Book v. Astrue, 11-

60512-CIV, 2012 WL 3000689, at *2 (S.D. Fla. July 23, 2012). Thus, on this basis, the ALJ did not err by failing to consider Dr. Rumph's opinion.

Moreover, even assuming the ALJ should have considered Dr. Rumph's opinion, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)); see also Voronova v. Astrue, 3:11-CV-709-J-32JBT, 2012 WL 2384414, at *2 (M.D. Fla. May 7, 2012), *adopted by* 3:11-CV-709-J-32JBT, 2012 WL 2384044 (M.D. Fla. June 25, 2012) (providing that, where ALJ's opinion extensively discussed other evidence in record, failure to mention opinion of "other source" (chiropractor) was not reversible error, as substantial evidence supported the ALJ's decision to essentially afford no weight to the opinion). Accordingly, the ALJ did not err in failing to mention Dr. Rumph's opinion.[4]

### 5. State Agency Doctors

Plaintiff also alleges in conclusory fashion that the ALJ "relied on non-examining, non-treating state agency doctors who were only privy to a fraction of the evidence." Pl.'s

---

[4] Additionally, as discussed below, see infra Part III. B., the ALJ concluded that the objective medical evidence did not support Plaintiff's claims of her disabling limitations, and also discredited Plaintiff based on inconsistency in her statements and her daily activities. To the extent that Dr. Rumph observed the limitations that Plaintiff alleged, R. 181, the ALJ did not err in affording the opinion essentially no weight, as substantial evidence supports his finding that Plaintiff's allegations of the severity of her impairments were not credible. See Voranova, 2012 WL 2384414, at *5 (ALJ did not err in failing to mention opinion of "other source" [daughter] where there was "substantial overlap" between plaintiff's testimony and daughter's statements and the ALJ had determined plaintiff was not credible).

10

Br., p. 9. Plaintiff seems to allege that the ALJ improperly discounted the opinions of her treating physicians in favor of the agency doctors. Id. To the contrary, the ALJ provided specific reasons for discounting the opinions of Plaintiff's treating physicians, none of which involved the opinions of the state agency doctors. See supra Part III. A. 1-3. The ALJ then considered the agency doctors' opinions that Plaintiff could engage in "light work" after a review of all of Plaintiff's medical records. See R. 21-24, 25.

Under the regulations, the opinions of state agency medical doctors constitute acceptable medical sources upon which the ALJ may rely in determining the existence or severity of a claimant's ailments. See 20 C.F.R. §§ 404.1502, 404. 1527. Moreover, according to Social Security Ruling 96-6p, findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and Appeals Council levels of administrative review. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). Although ALJs are not bound by the findings of state agency doctors, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." Id. at *2. Finally, where the opinions of state agency medical consultants are consistent with the objective medical evidence as a whole, an ALJ may assign significant weight to such opinions. See Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 874 (11th Cir. 2011) (*per curiam*).

Here, the ALJ properly relied, in part, on the opinions of the state agency doctors. In particular, the ALJ noted that the first of these opinions, from March 23, 2007, was "well-reasoned and consistent with the overall medical evidence of record." R. 25 (citing R. 445-

52). The agency doctors' opinions were based on a review of a portion of the objective medical evidence that was before the ALJ, as the opinions were written on March 23, 2007, R. 452, and October 23, 2007, R. 523. Like the ALJ, the doctors concluded that Plaintiff's allegations were only partially credible based on the medical evidence. R. 450, 523. Moreover, as did the ALJ, the state agency doctors relied on the absence of significant clinical abnormalities in making their determination that Plaintiff could engage in light work. R. 446-47, 523. Furthermore, the ALJ addressed the two years of medical records that followed the most recent of the state agency's assessments. See infra Part III. B. Accordingly, the ALJ's decision to afford weight to the state agency medical opinions about Plaintiff's capacity for light work is supported by substantial evidence.

### B. The ALJ Properly Considered Plaintiff's Subjective Complaints

Plaintiff also contends that the ALJ used "boiler-plate language to discredit Plaintiff's testimony . . . ." Pl.'s Br., p. 9. The Commissioner responds that the ALJ used not only "boiler-plate language," but also provided several adequate reasons for discrediting Plaintiff. Comm'r's Br., p. 8. The Court again finds that the Commissioner has the better argument.

The Eleventh Circuit has established a three-part standard for evaluating a claimant's complaints of pain and other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or

"the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*).[5] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (*per curiam*) (internal quotation marks and citations omitted).

Here, the ALJ's written decision clearly reflects the Holt analysis was appropriately followed when reaching the conclusion that Plaintiff's subjective complaints were not credible to the degree alleged. R. 24-26. The ALJ addressed each prong of the Holt analysis as described above, and substantial evidence in the record supports his findings.

First, the ALJ acknowledged that there was evidence of underlying medical conditions constituting severe impairments: Meuniere's disease, degenerative disc disease of the lumbar and cervical spines, and peripheral neuropathy. R. 21, 24-25. Having addressed the first prong of Holt, the ALJ went on to evaluate Plaintiff's allegations of the severity of her symptoms

---

[5]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

13

stemming from those impairments. The ALJ reviewed the medical evidence of record, and found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment. R. 24-25.

As Plaintiff testified at the hearing that her Meniere's was under control, R. 43, the ALJ focused his analysis of the medical record on Plaintiff's allegations of pain and inability to sit, stand, or use the computer for prolonged periods, and then offered several reasons for discrediting Plaintiff's testimony. R. 24-25. The first was that Plaintiff's allegations about the severity of her symptoms were not supported by the objective medical evidence of record. R. 25. The ALJ noted in his review of the evidence that Plaintiff's doctors failed to note significant clinical abnormalities that explained her subjective complaints and thus recommended conservative treatment. R. 22-23 (citing R. 363, 428-33, 473, 531, 571, 572, 575, 603, 612, 641-43, 654-55, 669, 692). Consistent conservative treatment by doctors may be used to discount a claimant's testimony about the severity of her limitations. See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996). Moreover, the ALJ noted that Plaintiff's "obesity [] in all likelihood has contributed to her musculoskeletal complaints," R. 24, and cited evidence in the record where physicians recommended Plaintiff exercise and lose weight. R. 22-23 (citing R. 428-33, 641-43).

The ALJ also stated that he discredited Plaintiff because her descriptions of her symptoms to her doctors were inconsistent. R. 25. Specifically, the ALJ commented that "[Plaintiff] has used a cane when recent medical treatment records document no gait abnormalities," id., and cited, in his review of the medical evidence, the records showing no

14

abnormalities in Plaintiff's gait, R. 22-23 (citing R. 473, 536-38, 571, 641-43). Moreover, the ALJ specifically addressed the one occasion that a doctor's treatment notes showed her gait was abnormal, emphasizing that on October 23, 2008, at a medical visit with her neurologist, Plaintiff had no abnormalities in her gait, but at a new patient visit with a different doctor four days later, her gait was stilted and she was using a cane. R. 23 (citing R. 642, 680-81). Thus, substantial evidence supports the ALJ's decision to discredit Plaintiff based on her use of a cane.[6]

The ALJ also discredited Plaintiff because of her daily activities. R. 25. Under Eleventh Circuit law, "participation in everyday activities of short duration, such as housework or fishing," does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). However, while an ALJ may not cite minimal daily activities as a pretext for disregarding evidence contrary to his decision, see id. at 1441, a claimant's daily activities are properly considered by the ALJ in assessing the claimant's credibility. See, e.g., Moore v. Barnhart, 405 F.3d 1208, 1212-13 (11th Cir. 2005). Here, the ALJ noted that "[Plaintiff] alleges disability and she was going to run for elected office, which involves assumption of significant responsibility. She is the president of her homeowner's association and has been the musician for the children's choir at her church." R. 25. The ALJ derived this information from Plaintiff's testimony and from notes from a visit with her neurologist in

---

[6]The ALJ also emphasized that Plaintiff reported needing knee surgery to two of her doctors, but that records failed to reflect such a recommendation. R. 25. Dr. Goodrich, however, did note in 2006 that Plaintiff "[w]ill probably need right knee replacement at some point in the future." R. 195. Accordingly, substantial evidence does not support the ALJ's decision to discredit Plaintiff based on her reports about knee replacement. In any event, any such error is harmless given the other adequate reasons the ALJ had for discrediting Plaintiff. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

15

September 2007, R. 38, 40, 575, and he properly considered these activities in assessing Plaintiff's credibility. See Moore, 405 F.3d at 1212 (ALJ properly relied on "inconsistencies between [claimant's] descriptions of her diverse daily activities and her claims of infirmity" in discrediting claimant).

Therefore, in satisfying the requirements of Holt, the ALJ also clearly explained his reasons for discounting Plaintiff's credibility. Here, the ALJ's credibility determination was based on the record as a whole, and he properly articulated the basis for his determination in his written decision. The ALJ reviewed Plaintiff's medical records and properly considered Plaintiff's own testimony regarding her symptoms and activities under the Holt standard. Taken in total, it is apparent that the ALJ rejected Plaintiff's subjective complaints concerning her alleged limitations after thoroughly evaluating the evidence in the record. Clearly articulated credibility findings such as these, which are supported by substantial evidence, will not be disturbed by a reviewing court. Foote, 67 F.3d at 1562. Accordingly, this issue provides no basis for remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 28th day of September, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE